**Mary Pierce, Administratrix, Appellee, v. Chicago City Railway Company, Appellant.**

**Gen. No. 21,363. (Not to be reported in full.)**

Appeal from the Superior Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed November 15, 1916. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Action by Mary Pierce, as administratrix of the estate of Hugh McGuire, deceased, plaintiff, against

the Chicago City Railway Company, defendant, to recover for the death of plaintiff's intestate. From a judgment for plaintiff for $6,500, defendant appeals.

The material facts are as follows: Seventy-fifth street was, at the time of the accident, the southern terminus of defendant's Cottage Grove line. The north and southbound tracks were connected by two crossovers. In connection with the crossover from the southbound to the northbound track there was a hand switch, and cars from the north were sent south of this switch, and when an opportunity offered were sent back of the switching point and across to the northbound track. Cars constantly accumulated at the terminal, and in order to transfer them and to arrange them so as to get them out in the order in which they arrived, there was a constant backing and switching. Generally the work was done by the motormen and conductors, but at meal times it was usually done by two switchmen, and when necessary to get out on time, the car crew assisted even at mealtimes. There was also a supervisor or starter who had complete authority over the cars and men at the terminus. Eichorn, the starter at the time of the accident, had been in the employ of the company about twenty-four years.

On the day of the accident deceased, a conductor, and his motorman, reached the terminus after 6 p. m. Deceased ate his supper on the car which had been switched to the outbound track. Finding it near starting time, he went to the north end of the car and commenced to shift the trolley poles preparatory to starting, and while so engaged was struck by an incoming car operated by one of the switching crew, which, instead of proceeding to the end of the inward track, took the switch which had been left open and crossed to the other track. On the outward bound track there was room for but four cars back of the switch, and deceased's was the fourth. The switch in question was operated by raising a lever with the hand, which, when

released, fell back to the original position, in which the inward track was left clear to its end. The starter raised the lever himself to switch deceased's car, and for some reason propped up the handle with a block, leaving the switch open.

The following instructions were given for the plaintiff:

"The court instructs the jury that where a master confers authority upon one of his employees to take charge and control of a certain class of workmen, in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge, with respect to that branch of the business is the direct representative of the master, and is not a mere fellow-servant; and all the commands given by him within the scope of his authority are, in law, the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, it is in law the same as though the master itself was guilty of such conduct."

"The court instructs the jury that to constitute servants of the same master, fellow-servants, it is not enough that they are engaged in doing parts of the same work, or in the promotion of the same enterprise carried on by the master, not requiring co-operation or bringing them together, or in such relations as that they may have an influence upon each other, but it is essential that at the time it is claimed such relations exist they shall be directly co-operating with each other in the particular business in hand, or that their usual duties shall bring them into such habitual association that they may have the opportunity and power to exercise an influence upon each other promotive of proper caution for their personal safety."

"The court instructs the jury that when it is said in these instructions that the deceased was required to exercise ordinary care for his own safety, it is meant that he was required to exercise that degree of care which an ordinarily prudent person, situated as he was,

both before and at the time of the injury, would have exercised for his or her own safety.''

FRANKLIN B. HUSSEY, CHARLES LE ROY BROWN and J. R. GUILLIAMS, for appellant.

JAMES C. McSHANE, for appellee.

MR. JUSTICE GOODWIN delivered the opinion of the court.

### Abstract of the Decision.

1. MASTER AND SERVANT, § 699*—*when evidence shows street car conductor not guilty of contributory negligence.* In an action to recover for the death of a street car conductor as a result of being struck by another car while changing the trolley poles of his car at the end of the line preparatory to making another trip, where defendant relied on contributory negligence, evidence examined and *held* to sustain a finding that plaintiff's intestate was not guilty of contributory negligence.

2. MASTER AND SERVANT, § 693*—*when evidence shows street railway employee guilty of negligence.* In an action to recover for the death of a street car conductor as a result of being struck by another car while changing the trolley poles of his car at the end of the line preparatory to making another trip, where the cause of the accident was the act of defendant's starter in leaving open a switch whereby a car arriving from the opposite direction took the switch instead of proceeding to the end of the track, thereby crossing to the other track and striking deceased, a verdict that the starter was negligent, *held* not against the manifest weight of the evidence.

3. MASTER AND SERVANT, § 696*—*when evidence shows employee vice principal.* In an action to recover for the death of a street car conductor as a result of being struck by a car at a street car terminal, where the cause of the accident was the act of defendant's starter in leaving a switch open, so that an incoming car took the switch instead of proceeding ahead, striking deceased, evidence that defendant established a rule that "starters will have control over the movement of cars at terminals * * * and other points where employees are stationed," coupled with testimony of the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Pierce v. Chicago City Ry. Co., 202 Ill. App. 69.

starter that he had such control at such time and place, *held* sufficient to show that the starter was a vice principal.

4. MASTER AND SERVANT, § 242*—*what act of vice principal not that of fellow-servant.* In an action to recover for the death of a street car conductor as a result of being struck by a car at a street car terminal, resulting from the act of a starter in leaving open a switch, causing an incoming car to take the switch and strike deceased, where there was evidence sufficient to show that the starter was a vice principal, *held* that in the act of personally opening the switch the starter was not a fellow-servant of deceased, the starter's duty being that of supervision, and to use due care to see that no other car was switched across so as to injure deceased, which duty was continuing and of which the starter could not divest himself, no matter whether the switch was opened by himself or another.

5. MASTER AND SERVANT, § 103*—*when street car conductor acting within scope of authority.* In an action to recover for the death of a street car conductor as a result of being struck by another car at a street car terminus, where there is evidence that at the time of the accident it was within one minute of deceased's leaving time, for which reason he himself was shifting his trolley poles preparatory to a quick departure, instead of waiting for a switching crew who usually performed such service, *held* that deceased was acting in the scope of his duty when killed, for since the duties of conductors and motormen in such case cannot be absolutely defined and divided, and since the successful prosecution of the company's business demands the prompt dispatch of cars from a terminus, it is the duty of conductors and motormen to co-operate to that end.

6. MASTER AND SERVANT, § 779*—*when instruction as to effect of negligence of vice principal proper under evidence.* In an action to recover for the death of a street car conductor as a result of the act of defendant's vice principal, a starter, in leaving a switch open at a street car terminus, so that deceased was struck by another car, an instruction as to the effect of the negligent and unskilful exercise of the authority of a vice principal as bearing on the principal's liability for negligence, *held* not erroneous for want of evidence whereon to base it, where it appeared that at the time of the accident such starter was, under defendant's rules, in control of cars and men at the point where the accident occurred, and where the man in charge of the car which struck deceased was under the control of such starter and subject to his directions, although it appeared that the starter gave no commands, the language used being obviously proper in such case.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Pierce v. Chicago City Ry. Co., 202 Ill. App. 69.

7. MASTER AND SERVANT, § 779*—*when instruction on effect of acts of vice principal on master's liability not erroneous.* In an action to recover for the death of a street car conductor as a result of the act of defendant's vice principal, a starter, in leaving a switch open at a street car terminus, so that deceased was struck by another car, an instruction that the "commands" of the vice principal within the scope of his authority are the commands of the principal, *held* not erroneous where the evidence showed that no commands were given, and that the act complained of as negligence consisted of permitting the car which struck deceased to pass the open switch, since the jury could not have understood the reference to commands to refer to directions given in the case, and since the language complained of was used merely to illustrate to the jury the close identification of the master and vice principal.

8. MASTER AND SERVANT, § 789*—*when instruction on effect of negligence of vice principal does not direct a verdict.* An instruction that the commands given by a vice principal within the scope of his authority are the commands of the master, and that if the vice principal is negligent in the exercise of his power and authority, his negligence is the negligence of the master, *held* not to direct a verdict either expressly or impliedly, the sole effect of the instruction being to say that the negligence of a direct representative of the master is that of the master himself.

9. MASTER AND SERVANT, § 804*—*when instruction on who are fellow-servants not misleading.* In an action to recover for the death of a street car conductor as a result of the act of defendant's starter in leaving a switch open at a street car terminus, whereby deceased was struck by another car, where defendant claimed that the starter was a fellow-servant of deceased, an instruction as to who are fellow-servants, *held* to give no misleading direction or impression, where the second part, which was the vital and directing part of the instruction, stated with clearness the alternative conditions which must exist in order to constitute fellow-servants, although the first or negative part was awkwardly worded and difficult to understand.

10. MASTER AND SERVANT, § 699*—*when instruction on contributory negligence not erroneous.* In an action to recover for the death of a street car conductor as a result of the negligence of defendant's vice principal, an instruction defining ordinary care as that of an ordinarily prudent person "situated as he was, both before and at the time of the injury," *held* not erroneous as assuming that an ordinarily prudent person would be situated as deceased was, the plain import of the instruction being to require deceased to observe ordinary care both before and at the time of the injury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. MASTER AND SERVANT, § 777*—*when instruction properly refused as misleading.* In an action to recover for the death of a street car conductor as a result of the act of defendant's starter in opening a switch at a street car terminus and slipping a block under the switch handle so that the switch remained open, as a result of which a car took the switch instead of proceeding to the end of the line, and, crossing to the other track, struck and killed deceased, an instruction that because it was not charged in the declaration that a stick or block of wood was used to prop the switch open, no recovery could be had on account of the act of using such block, *held* properly refused, since the act was but a single incident in the negligent conduct charged in the declaration, and the requested instruction would have created an erroneous impression that such fact might be eliminated in considering the question of negligence.

12. INSTRUCTIONS, § 128*—*when refusal to direct finding on count not supported by evidence not erroneous.* In an action to recover for death which is the result of personal injuries sustained by deceased by reason of defendant's negligence, it is not reversible error to refuse instructions to find defendant not guilty on counts not supported by evidence where the evidence is sufficient to support any one valid count.